# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**HOWARD ALAN FREUDENVOLL,**

**Plaintiff,**

-vs-                                                      Case No.  **6:12-cv-467-Orl-22GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

_____

# REPORT AND RECOMMENDATION

TO THE UNITED STATES DISTRICT COURT:

Howard Freudenvoll (the "Claimant") appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for benefits.  Doc. No. 1. Claimant maintains that the final decision of the Commissioner should be reversed and remanded because: 1) the Administrative Law Judge (the "ALJ") erred by failing to account for Claimant's moderate limitations in concentration, persistence, or pace in the ALJ's hypothetical question to the Vocational Expert (the "VE"); 2) the Appeals Council failed to demonstrate that it adequately considered the new and material evidence, which evidence creates a reasonable possibility the administrative outcome would change; 3) the ALJ failed to consider whether Claimant meets Listing 4.02(A)(1)(B)(1); and 4) the ALJ failed to consider Claimant's obesity at step-two and in determining Claimant's residual functional capacity ("RFC").  Doc. No. 17 at 8-21.  For the reasons set forth below, it is recommended that the final decision be **REVERSED and REMANDED for further proceedings**.

## I.   BACKGROUND.

Claimant was born on August 14, 1963, and completed the eleventh grade.  R. 47, 130. Claimant's past employment history includes construction work.  R. 38, 51.  On February 13, 2009, Claimant filed an application for supplemental security income alleging an onset of disability beginning October 31, 2008.  R. 114.  Claimant alleges disability due to heart problems, sleep apnea, hypertension, shortness of breath, and depression.  R. 75, 125.  In Claimant's administrative disability report, which describes the combination of impairments, symptoms, and limitations, Claimant did not allege that obesity limits his ability to work.  R. 125.[1]

### A.  Medical Record - ALJ.

The following is a summary of the medical and opinion evidence Claimant submitted to the ALJ.  The record contains documentation regarding two hospitalizations in 2008 and one in 2009, and two nonexamining exertional RFC opinions offered by state agency physicians.  R. 58-65, 207-382.  The record before the ALJ does not include any opinions from treating or examining physicians regarding Claimant's functional limitations.  R. 58-382.

October 15, 2008, treatment records from Florida Hospital show that Claimant was diagnosed with mild cardiomyopathy with an ejection fraction of 40% to 45%, atrial fibrillation, and substance abuse.  R. 330.[2]  At that time, Claimant was negative for coronary artery disease.

---

[1] The initial and reconsideration level denials also indicate that Claimant did not allege disability based upon obesity.  R. 75, 125.

[2] Ejection fraction is the fraction "of the blood contained in the ventricle at the end of the diastole that is expelled during its contraction, i.e., the stroke volume divided by end-diastolic volume, normally 0.67 or greater, with the onset of congestive heart failure, the ejection [fraction] decreases, sometimes to 0.10 or even less in severe cases." *Stedman's Medical Dictionary*, 26th Ed. p. 685 (1995).  Thus, ejection fraction is a measurement of the percentage of blood leaving an individual's heart each time it contracts.  Ejection fraction may be measured using an

R. 330.  Treatment notes indicate that Claimant was looking for work and wanted to know if he could exercise.  R. 330.  Dr. Baiju limited Claimant to lifting twenty-five (25) pounds.  R. 330.

On October 31, 2008, Claimant presented to Florida Hospital complaining of shortness of breath and was admitted until approximately November 16, 2008.  R. 233-65, 271-300. Admission notes show that Claimant had a past history of atrial fibrillation, hypertension, noncompliance with medication, and obstructive sleep apnea.  R. 235, 271.  Claimant presented obese with atrial fibrillation and was admitted for further evaluation.  R. 271.[3]  Claimant reported dyspnea both with exertion and at rest.  R. 278.  Chest x-rays revealed cardiomegaly, subtle bilateral pulmonary infiltrate, and mild congestive heart failure.  R. 241, 247, 275.  At admission Claimant's ejection fraction was estimated to be between 30% to 35%, but was later estimated to be 20% to 25%.  R. 292, 293.  The hospitalists' impressions were "[u]pper respiratory infection, which has progressed to congestive heart failure, which could be secondary to rapid ventricular response with atrial fibrillation, secondary to atrial fibrillation, and secondary to cocaine use." R. 275.  Claimant was also diagnosed with morbid obesity, hypertension, and moderately decreased ejection fraction with severely decreased left ventricular systolic function.  R. 276, 279, 292, 293.

On November 25, 2008, Claimant presented to Florida Hospital complaining of chest pains and an episode of syncope.  R. 207.  Claimant was admitted to the hospital for further evaluation and was discharged on December 9, 2008.  R. 207.  Upon admission, Claimant was diagnosed with chest pain, atrial fibrillation, obstructive sleep apnea, hypertension, and alcohol

---

echocardiogram, cardiac catheterization, magnetic resonance imaging, computerized tomography, and nuclear medicine scan.  http://www.mayoclinic.com/health/ejection-fraction/AN00360.

[3] Claimant admitted to smoking and using cocaine, but a urine screen was negative for cocaine.  R. 235, 262, 274.

abuse.   R. 207.[4]  A heart catheterization revealed nonischemic cardiomyopathy with mild coronary artery disease, severe systolic dysfunction, severe pulmonary venous hypertension, and mild pulmonary artery hypertension.  R. 207, 211.  Treatment records show that Claimant did not have "acute symptoms of congestive heart failure."   R. 303.   Discharge diagnoses were cardiomyopathy with left ventricular ejection fraction of 20% to 25%, atrial fibrillation, obstructive sleep apnea, stable hypertension, mild non-significant stenosis of the coronary arteries with severe systolic dysfunction, and obesity.   R. 307, 309.   The hospitalists recommended that Claimant undergo a procedure to implant a defibrillator at some point in the future when he is more stable.  R. 310.

On March 11, 2009, Cherly McIntosh provided a nonexamining RFC assessment based upon a medical records review.  R. 58-65.[5]  Ms. McIntosh opined that Claimant has a primary diagnosis of atrial fibrillation and no secondary diagnosis.  R. 58. Ms. McIntosh opined that Claimant is capable of performing a full range of light work with no postural, manipulative, visual, communicative, or environmental limitations.  R. 59-62.

On April 15, 2009, Claimant presented to Dr. Baiju for a follow-up complaining of chest pain and heart flutters.  R. 334.  Dr. Baiju's records show that Claimant, who is 5'11, weighed 310 pounds.  R. 334.  Dr. Baiju diagnosed Claimant with mild coronary artery disease, heart flutters, hypertension, cardiomyopathy, and stated that Claimant needed medication refills.  R. 334.

On August 5, 2009, Dr. Loc Kim Le provided a nonexamining RFC assessment based upon a medical records review.  R. 342-49.  Dr. Le opined that Claimant has a primary diagnosis

---

[4] Claimant's alcohol levels were markedly elevated at the time of admission.  R. 207.
[5] Ms. McIntosh's RFC does not state her qualifications, but no party has challenged her qualifications to render such an opinion.

of atrial fibrillation, a secondary diagnosis of mild coronary artery disease, and hypertension.  R. 342.  Dr. Le opined that Claimant is limited to light work and has no postural, manipulative, visual, or communicative limitations.  R. 343-46.  Dr. Le opined that Claimant is further limited to avoiding concentrated exposure to extreme heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards.  R. 346.  Dr. Le stated that Claimant is capable of walking 150 yards slowly before having to stop due to fatigue, chest pain and shortness of breath.  R. 347.  Dr. Le stated that Claimant has chest pain daily, but it is usually relieved by aspirin or nitroglycerin pills.  R. 347.

On November 23, 2009, Claimant was admitted to Florida Hospital weighing 318 pounds and complaining of chest pain.  R. 354.  Claimant was diagnosed with atypical chest pain, cardiomyopathy with decreased ejection fraction, and pulmonary hypertension.  R. 354.  Claimant admitted that he had not been taking all of his prescribed medications due to "financial difficulties and lack of insurance."  R. 367.  Claimant reported rare alcohol consumption and no current illicit drug use. R. 368.  A chest x-ray showed stable cardiomegaly without acute cardiac process.  R. 369, 382.  Claimant lacked health insurance, was told that the hospital could no longer provide him with medication, and was encouraged to obtain medications.  R. 352, 355.

On January 22, 2010, Claimant presented to Dr. Baiju for a follow up.  R. 360-63.  Claimant reported feeling tired, experiencing episodic palpitations, dyspnea, and having good days and bad days. R. 360.  Physical and neurological examinations were essentially normal.  R. 361-62.   Dr. Baiju assessed atrial fibrillation, nonischemic cardiomyopathy, essential hypertension poorly controlled, morbid obesity, nicotine dependence, and obstructive sleep apnea.  R. 362.

**B.  Proceedings Before the ALJ.**

On October 12, 2010, Claimant's counsel sent a statement to the Commissioner outlining Claimant's claims.  R. 104-05.  In a section regarding Claimant's medical problems, Claimant listed "morbid obesity."  R. 104.  On November 22, 2010, a hearing was held before ALJ Pamela Houston.  R. 31-57.  Claimant and VE Dana Lessne were the only persons to testify.  R. 31-57.  At the hearing, Claimant's counsel asked that the ALJ specifically consider Listing 4.02(A)(1), and argued that Claimant meets the requirements of that Listing.  R. 35.[6]  Neither the ALJ nor Claimant's counsel asked the Claimant any direct questions regarding obesity or functional limitations resulting therefrom.  R. 31-57.[7]

During the hearing, the ALJ posed the following hypothetical question to the VE:

> Consider a hypothetical individual the [C]laimant's age, education, and vocational history who can lift and carry 20 pounds occasionally, 10 pounds frequently; sit, stand, and walk for six out

---

[6] Listing 4.02 provides:

> 4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2.  The required level of severity for this impairment is met when the requirements of both A and B are satisfied.
>
> A.  Medically documented presence of one of the following: (1) Systolic failure (see 4.00D1a(i), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure). . . .
>
> AND
>
> B.  Resulting in one of the following: (1) Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an [Medical Consultant], preferably one experienced in the care of patients which cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual. . . .

*Id.* (emphasis added).

[7] Claimant was generally questioned about his ability to climb stairs, walk, stand, sit, bend, lift, and his daily activities.  R. 36, 41-47, 49.

> of eight hours with normal breaks; pushing and pulling with the extremities is unlimited but consistent with the lift and carry restrictions; no concentrated exposure to fumes, odors, gases, poor ventilation; no more than occasional climbing but no ladders, ropes, or scaffolds; no work at heights; no working with moving dangerous machinery; also no concentrated exposure to extreme temperatures or wetness/humidity.  Are there any jobs in the local or national economy for such an hypothetical individual?

R. 52-53.  The VE responded that such an individual could perform light work as a cashier II, ticket seller, and office helper. R. 53.[8]

On December 3, 2010, the ALJ issued a decision finding Claimant not disabled since February 4, 2009, the date the application was filed.  R. 18-26.  The ALJ found that Claimant has the following severe impairments: low ejection fraction, cocaine abuse, and alcohol abuse.  R. 20.  The ALJ stated that she considered the Listings in Section 4.00 for the Cardiovascular System, but "the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination."  R. 20.  In considering Claimant's allegations of a mental impairment, at step-two, the ALJ found:

> With regard to concentration, persistence or pace, the [C]laimant has moderate difficulties.  The [C]laimant testified that he had difficulty maintaining concentration, persistence and pace because he experienced side effects from his medication.  He stated that he was often sleepy and mentally foggy.  Typically, not all individuals who take the same medication experience the same side effects.  The undersigned will take [C]laimant at his word and give him the benefit of the doubt regarding the effects of his medication.  However, at most, the evidence supports only a moderately restriction [sic] in this area of functioning.

R. 21.  Thus, at step-two, the ALJ found that the medical evidence supports a finding that

---

[8] The above-stated hypothetical question coincides with the ALJ's RFC assessment.  R. 22.  However, the ALJ also posed a second hypothetical question to VE with additional strength limitations, and the VE testified that there were jobs that existed that such a claimant could perform.  R. 53-54.

Claimant has moderate limitations in the ability to maintain concentration, persistence or pace. R. 21.

The ALJ found that Claimant retains the RFC to "perform light work" with the following additional limitations: "The claimant should avoid concentrated exposure to fumes, odors, gases, poor ventilation and no climbing of ladders, now working at heights, no working with moving dangerous machinery; and no concentrated exposure to extreme heat, wet, and humid temperatures."   R. 22.[9]   The ALJ found Claimant's subjective statements regarding his limitations not credible to the extent they are inconsistent with the ALJ's above-stated RFC.  R. 22.   The ALJ gave great weight to the opinion of Dr. Le, whose nonexamining RFC opinion coincides with the ALJ's RFC.  R. 23.  The ALJ found that the Claimant could not perform his past relevant work and, at step-five, the ALJ relied upon the testimony of the VE to determine that other work exists in the national economy which Claimant can perform. R. 24-25. Accordingly, the ALJ found that Claimant is not disabled.  R. 25.

### C.  Appeals Council – New Evidence.

Claimant requested review of the ALJ's decision from the Appeals Council and submitted new evidence. R. 11, 383-460.  The new evidence consists of medical records from two more recent hospitalizations in January and February of 2011, and a January 27, 2011

---

[9] Light work involves:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work . . . he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 404.1567(b).

opinion from Claimant's treating cardiologist, Dr. Barbara Czerska, the Medical Director of Florida Hospital's Advanced Heart Failure, Cardiac Transplant, and Circulatory Assist Device Program.  R. 383-460.

On January 4, 2011, Claimant presented to Florida Hospital complaining of chest pain and dyspnea, which was not relieved by application of his Constant Positive Airway Pressure ("CPAP") device.  R. 435.  A left heart catheterization revealed mild to moderate coronary artery disease with a maximum stenosis of 40% to 50% and ejection fraction was estimated to be 10% to 15%.  R. 435.  Dr. Barbara Czerska assessed severe cardiomyopathy and admitted the Claimant for further evaluation.  R. 435.  A transthoracic echocardiogram later revealed an ejection fraction of 20%. R. 435.  Claimant also continued in atrial fibrillation. R. 435-36.

Claimant reported that he is unable to ambulate greater than half a flight of stairs and admitted noncompliance with his medications due to financial inability to pay.  R. 436.  On January 6, 2011, Dr. Czerska diagnosed Claimant with Stage D III/IV heart failure, nonobstructive coronary artery disease, atrial fibrillation with atrial flutter, pulmonary hypertension, morbid obesity with obstructive sleep apnea, diabetes, hypertension, medical noncompliance secondary to financial constraint, and recent tobacco abuse, but no use of tobacco in the past month.  R. 437.  Dr. Czerska stated that Claimant is not currently a candidate for a ventricular assist device or heart transplant due to his present weight and other "comorbidities," and asked for assistance from case management services in qualifying Claimant for medical disability.  R. 437.  On January 12, 2011, Claimant underwent a procedure to place a single-chamber implantable cardioverter-defibrillator in the left side of this chest.  R. 430-32.

On January 27, 2011, Dr. Czerska provided the following medical opinion to Claimant's

counsel:

> As you are aware, [Claimant] has been diagnosed with Stage D
> Class III/IV heart failure.  This is the most severe form of heart
> failure and by definition, requires advanced therapies.  With an
> estimated ejection fraction of less than 20% and marked symptoms
> at rest, [Claimant] certainly qualifies for Section 4.1b(i) of the
> Medical Listing of Impairments.  As an advanced heart failure
> specialist, I have examined [Claimant] and recommend he be
> considered for disability so we may proceed with appropriate
> treatment. . . . Please do not hesitate to contact my office if I can be
> of further assistance.

R. 434.  Thus, Dr. Czerska opined that Claimant has the most severe form of heart failure with an

estimated ejection fraction of less than 20% and marked symptoms at rest.  R. 434.  Accordingly,

as an advanced heart failure specialist, Dr. Czerska opined that Claimant meets the listing.  R.

434.

On February 1, 2011, Claimant presented to Florida Hospital complaining of chest pain

with defibrillator shock.  R. 391.  Treatment records show that Claimant is unable to ambulate

more than 50 feet and is experiencing severe defibrillator shock.  R. 391.  The hospitalist

assessed severe cardiomyopathy, a subacute thrombotic occlusion of the left popliteal artery,

ejection fraction of 10%, coronary artery disease, hypertension, obstructive sleep apnea, morbid

obesity, history of substance abuse, atrial fibrillation, and possible moderate atherooccclusive

disease.  R. 384, 388, 392-93, 396, 452.

On February 9, 2012, the Appeals Council denied Claimant's request for review.  R. 1-3.

The Appeals Council stated they "considered the reasons you disagree with the decision and the

additional evidence," but they "found that this information does not provide a basis for changing

the [ALJ's] decision."  R. 2.  On March 26, 2012, Claimant appealed the final decision of the

Commissioner in the District Court.  Doc. No. 1.

## II.   LEGAL STANDARDS.

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).   In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id.* (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.   STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991)).

When the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if it would have reached a contrary result as the finder of fact, or finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account both favorable and unfavorable evidence to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court must consider evidence detracting from evidence on which Commissioner relied). However, the District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

**C.     REMEDIES.**

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applies the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991);

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled)).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).   A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice. *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982).   The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098.   Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829- 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[10]

---

[10] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).   After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

III.   **ANALYSIS.**

   **A.  Concentration, Persistence or Pace.**

The parties are in disagreement as to the manner in which an ALJ may sufficiently account for a claimant's limitations in concentration, persistence, or pace in the RFC and in a hypothetical question to the VE.  *See* Doc. Nos. 17 at 15-20 (citing *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180-81 (11th Cir. 2011)); and Doc. No. 22 at 11-12. .[11]  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180 (11th Cir. 2011), the Eleventh Circuit held that an ALJ may not generally account for a claimant's limitations in maintaining concentration, persistence, or pace by restricting the hypothetical question to simple, routine tasks, or unskilled work.  *Id.*  In *Winschel*, 631 F.3d at 1181, Court found that:

> In this case, the ALJ determined at step-two that [claimant's] mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace.  But the ALJ did not indicate that medical evidence suggested [claimant's] ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical question. . . .
>
> Because the ALJ asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of [the claimant's] impairments, the vocational expert's testimony is not "substantial evidence" and cannot support the ALJ's conclusion that [the claimant] can perform significant numbers of jobs in the national economy.

*Id.*  Thus, because the ALJ in *Winschel* did not indicate that the medical evidence suggested the claimant could still work despite limitations in maintaining concentration, persistence or pace,

---

[11] Claimant filed a reply brief generally arguing that the Commissioner's arguments lack merit.  Doc. No. 26 at 3-5.

nor did the ALJ otherwise implicitly account for the limitation in the hypothetical question, the Eleventh Circuit remanded the case for the ALJ to pose a hypothetical question to the vocational expert which specifically accounted for the claimant's moderate limitations in maintaining concentration, persistence, and pace.  *Id.*

In *Scott v. Commissioner of Social Security*, 2012 WL 5358868 at *2 (11th Cir. Oct. 31, 2012), the Eleventh Circuit more recently clarified that:

> [W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.  Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

*Id.* (quoting *Winschel*, 631 F.3d at 1180-81).[12]  In *Scott*, the court held that the ALJ correctly found the medical evidence showed Scott could complete simple tasks on a regular basis and adequately accounted for his moderate limitations in concentration, persistence, or pace by limiting his hypothetical to work that would require low stress, simple, unskilled, one, two or three step instructions.   *Id*.  Thus, where the medical evidence demonstrates that a claimant can still engage in simple, routine tasks or unskilled work despite limitations in maintaining concentration, persistence, or pace, or the ALJ otherwise accounts for such limitations in the hypothetical question to the vocational expert, the ALJ has adequately addressed such limitations.  *Id*.  *See also Jarrett v. Commissioner of Social Security*, 422 Fed.Appx. 869, 871-72 (11th Cir. 2011) (unpublished) (citing *Winschel*, 631 F.3d at 1181); *Dawson v. Commissioner of Social Security*, Case No. 6:11-cv-1128-Orl-31KRS, 2012 WL 1624267 at *2 (M.D. Fla. May 9,

---

[12] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.

2012) (*Winschel* "did not hold that limitations in concentration, persistence, or pace can never be accounted for by a functional limitation to performing simple, routine tasks or unskilled work.").

In this case, the ALJ found at step-two that the Claimant has moderate difficulties in the ability to maintain concentration, persistence, or pace.  R. 21.  The ALJ specifically found that the "evidence supports only a moderately restriction [sic] in this area of functioning."  R. 21.  The ALJ's RFC does not include any limitations with respect to those moderate difficulties.  R. 22.[13]  Similarly, the hypothetical question posed to the VE did not include any such limitations.  R. 52-53.  Although case law supports a conclusion that an ALJ does not err if he or she explicitly or implicitly finds on the basis of substantial evidence that the claimant can perform unskilled, simple, or routine work despite limitations in the ability to maintain concentration, persistence, or pace, this is not such a case.  *See Scott*, 2012 WL 5358868 at *2 (11th Cir. Oct. 31, 2012); *Jarrett v. Commissioner of Social Security*, 422 Fed.Appx. 869, 871-72 (11th Cir. Apr. 11, 2011) (unpublished) ("[A]n ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies.").  Here, after finding that the medical record shows that Claimant is moderately limited in the ability to maintain concentration, persistence or pace, the ALJ totally failed to include such limitations, either explicitly or implicitly, in the hypothetical question to the VE.  Accordingly, it is recommended that the Court find that ALJ's determination

---

[13] The RFC does not include any limitation to simple or routine tasks or unskilled work.  R. 22.

at step-five, based on the VE's testimony, is not supported by substantial evidence.  *See Winschel*, 631 F.3d at 1180-81.[14]

**B.  The Appeals Council.**

Claimant argues that the Appeals Council failed to demonstrate that it adequately evaluated the new evidence and the case should be remanded to the Commissioner for further proceedings because the new evidence shows that there is a reasonable possibility that it would change the administrative outcome.  Doc. No. 17 at 8-13 (citing *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980); *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1257 (11th Cir. 2007); and *Flowers v. Commissioner of Social Security*, 441 Fed.Appx. 735, 745 (11th Cir. 2011) (unpublished)).[15]   The Commissioner maintains that the Appeals Council did not err because the Appeals Council has no duty to articulate a basis for its denial of a request for review beyond the statement that was provided by the Appeals Council.  Doc. No. 22 at 17-19 (citing 20 CFR § 416.1470; *Mansfield v. Astrue*, 395 Fed.Appx. 528, 530 (11th Cir. 2010) (unpublished); *Robinson v. Astrue*, 365 Fed.Appx. 528, 530 (11th Cir. 2010) (unpublished); *Barclay v. Commissioner of Social Security*, 274 Fed.Appx. 738, 743 (11th Cir. 2008) (unpublished)).[16]

In *Epps*, 624 F.2d at 1271-72, the Appeals Council simply stated that it had considered the new evidence submitted by the claimant, but it found the ALJ's decision to be correct.  *Id.* at 1272-73.  The Fifth Circuit held:

> We recognize that the claimant bears a heavy burden in proving
> disability. Nevertheless, we cannot find that the record in this case

---

[14] This error alone warrants reversal for further proceedings.  Nevertheless, the undersigned will address Claimant's remaining arguments below.

[15] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit.

[16] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.

> contains substantial evidence supporting the Secretary's denial of Epps' disability eligibility. The ALJ predicated his finding that Epps' back problem did not result in disabling pain or other incapacitating restrictions in significant part on his understanding that Epps had not required radical treatment. Yet the Appeals Council adopted the hearing examiner's decision without addressing post-hearing evidence of disability submitted by Dr. Kerr that expressly stated that conservative treatment had failed and that Epps had recently been referred for consideration of the radical intervention believed by the ALJ to be an important indicator of disability. Moreover, Dr. Kerr informed the Appeals Council that Epps continued to suffer pain and limited range of motion, that the contemplated surgery would not increase his productivity, and that there was no possibility that Epps would ever be fit to work in any type of job. Although the Appeals Council acknowledged that Epps had submitted new evidence, it did not adequately evaluate it. Rather, it perfunctorily adhered to the decision of the hearing examiner. This failure alone makes us unable to hold that the Secretary's findings are supported by substantial evidence and requires us to remand this case for a determination of Epps' disability eligibility reached on the total record.

*Id.* at 1273.   Thus, the Fifth Circuit reversed because the new evidence contradicted the ALJ's findings and the Appeals Council perfunctorily adhered to the ALJ's decision without adequately evaluating the new evidence.  *Id.*  Accordingly, the Court could not find that substantial evidence supported the Commissioner's decision.  *Id.*

In *Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984), the Eleventh Circuit relied upon *Epps* to state that its review of the additional evidence suggested that "Appeals Council did not adequately evaluate the addition evidence."  *Id.*  The Eleventh Circuit found that the Appeals Council perfunctorily adhered to the ALJ's decision and "[w]e have previously been unable to hold that the Secretary's findings were supported by substantial evidence under circumstances such as these."  *Id.*

In 1995, due to the volume of disability applications, the Commissioner promulgated a

memorandum "temporarily suspending the requirements for a detailed discussion of additional evidence [by the Appeals Council] and for specific responses to contentions in denial notices." HALLEX § 1-3-5-90, 2001 WL 34096367. *See also Higginbotham v. Barnhart*, 405 F.3d 332, 335 n. 1 (5th Cir. 2005) (noting that the Commissioner has suspended the detailed discussion requirement). This memorandum temporarily amended the Commissioner's Hearings, Appeals and Litigation Law Manual (the "Manual"). *See* HALLEX § 1-3-5-90, 2001 WL 34096367. Although the change was pronounced as temporary, to date it is still in effect. *Id*. The memorandum states that "this change does not in any way lessen the analyst's responsibility to consider the evidence and contentions and to make an appropriate recommendation to the Administrative Appeals Judge. It does mean that any required analysis can be included in the less formal setting of the recommendation, saving the time it would take to compose, edit and perhaps revise more formal language in the notice itself." HALLEX § 1-3-5-90, 2001 WL 34096367.

In *Ingram*, 496 F.3d at 1259, the claimant submitted new evidence to the Appeals Council. *Id*. The Appeals Council stated that it considered the new evidence, but denied the claimant's request for review stating that it did not provide a basis to change the ALJ's decision. *Id*. On appeal, the claimant argued that the case should be remanded because the evidence submitted to the Appeals Council was new and material because it would likely change the administrative outcome. *Id*. at 1260. The Commissioner argued that the court "cannot review under sentence four the decision of the Appeals Council not to grant review on the basis of new evidence because that decision is not any final decision of the Commissioner of Social Security." *Id*. at 1262 (internal quotations and citations omitted). The Eleventh Circuit expressly rejected

the Commissioner's argument and held that "[t]he settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council." *Id.* The Eleventh Circuit, quoting *Bowen*, once again noted when the Appeals Council does not adequately evaluate the additional evidence it has been unable to hold that the final decision is supported by substantial evidence. *Ingram*, 496 F.3d at 1263.

In *Flowers*, 441 Fed.Appx. at 740-41, the claimant submitted new medical evidence to the Appeals Council, some of which pre-dated and some of which post-dated the ALJ's decision. *Id.* The Appeals Council stated that it had considered the information, but it did not provide a basis for changing the ALJ's decision. *Id.* at 741. On appeal, the Eleventh Circuit stated:

> Generally, a claimant is allowed to present new evidence at each stage of this administrative process. *See* 20 C.F.R. §§ 404.900(b), 416.1470(b); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not to review the ALJ's denial of benefits. 20 C.F.R. §§ 404.970(b), 416.1470(b). However, the Appeals Council must consider "new and material evidence" that "relates to the period on or before the date of the administrative law judge hearing decision" and must review the case if "the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id.* The new evidence is material, and thus warrants a remand, if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

*Id.* at 745. Thus, the Eleventh Circuit stated that although the Appeals Councils has the discretion not to review to the ALJ's decision, it must consider new and material if it "relates to the period on or before the date of the ALJ's decision" and must review the case if the ALJ's findings or conclusions are contrary to the weight of the evidence in the current record. *Id.*

(citing 20 CFR § 416.1470(b)).[17]

The Eleventh Circuit concluded:

> When a claimant properly presents new evidence, and the Appeals Council denies review, the Appeals Council must show in its written denial that it has adequately evaluated the new evidence. *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980). If the Appeals Council merely "perfunctorily adhere [s]" to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence and we must remand "for a determination of [the claimant's] disability eligibility reached on the total record." *Id.*

> We conclude that the Appeals Council did not adequately consider Flowers's new evidence. Indeed, apart from acknowledging that Flowers had submitted new evidence, the Appeals Council made no further mention of it or attempt to evaluate it. Furthermore, there is a reasonable possibility that Flowers's new evidence would change the ALJ's decision.

*Id.* at 745.  Thus, because the Appeals Council failed to demonstrate that it adequately evaluated

the new and material evidence, the Eleventh Circuit remanded the case to the Commissioner for

further proceedings.  *Id.*

The Court finds *Flowers* persuasive and consistent with the binding precedent of *Epps*,

*Bowen*, and *Ingram*. *See also Colon v. Commissioner of Social Security*, 411 Fed.Appx. 236,

---

[17] 20 CFR § 404.1470(b) provides that "the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." *Id.*  In *Flowers*, although some of the new evidence post-dated the date of the ALJ's decision, the Eleventh Circuit noted that the parties did not dispute that the new evidence related to the relevant time period and found that the "the Appeals Council appears to have concluded that the new evidence related to the relevant period" because it stated that it had "considered" the new evidence. *Id.* at 745 n. 7 (citing 20 CFR § 416.1470(b)).  Thus, because the Appeals Council was not required to consider any additional evidence unless it related to the relevant time period and the Appeals Council had considered the additional evidence, the Eleventh Circuit inferred the Appeals Council had found the additional evidence related to the time period before the ALJ's decision. *Id.*  In this case, the Commissioner generally states that the new evidence submitted to the Appeals Council is not chronologically relevant to the ALJ's decision.  Doc. No. 22 at 9.  The evidence submitted to the Appeals Council is dated approximately two months subsequent to the hearing before the ALJ and one month subsequent to the ALJ's decision and relates to impairments that existed during the relevant time period.  R. 18-26, 31-57, 383-460.  As in *Flowers*, the Appeals Council stated that it had considered the new evidence. R. 1.  Thus, as in *Flowers*, it appears the Appeals Council concluded that the new evidence related to the relevant time period.

238-39 (11th Cir. 2011) ("The [Appeals Council] must show in its written denial of review that it has evaluated adequately the new evidence.") (citing *Epps*, 624 F.2d at 1273).[18] In this case, the ALJ found that the RFC "is supported by . . . findings . . . that the [C]laimant had mild coronary artery disease, non-significant stenosis, and mild pulmonary artery hypertension, cardiac catheterization is consistent with nonischemic cardiomyopathy, as well as treatment records from Dr. Baiju showing that the severity of the [C]laimant's symptoms abated when he stopped smoking and using cocaine." R. 24. The new evidence Claimant submitted to the Appeals Council, which is dated one month after the ALJ's decision, shows that Claimant has severe cardiomyopathy, Stage D III/IV heart failure, ejection fraction of 10% to 20%, atrial fibrillation, coronary artery disease, obstructive sleep apnea, morbid obesity, medical noncompliance secondary to financial constraint, and no active illicit substance abuse. R. 384, 388, 391-93, 396, 430-32, 434-37, 452. The new evidence also shows that Claimant is unable to ambulate more than 50 feet. R. 391. Furthermore, the Medical Director of Florida Hospital's Advanced Heart Failure, Cardiac Transplant, and Circulatory Assist Device Program, Dr. Czerska, opined that Claimant has the most serve form of heart failure, meets the listing, and is totally disabled. R.

---

[18] The Commissioner argues *Flowers* is not persuasive because that panel wrongly relied upon *Epps*, which was issued before the Commissioner suspended the requirement that the Appeals Council provide a detailed analysis when it denies a request for review. Doc. No. 22 at 18. The Court rejects the Commissioner's argument for two principal reasons. First, the Manual and the temporary amendment thereto do not carry the force and effect of law. *See Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) (holding that the Manual "is strictly an internal guidance tool, providing policy and procedural guidelines to ALJs and other staff members [and] it does not prescribe substantive rules and therefore does not carry the force and effect of law."). *Accord Bradley v. Sebelius*, 621 F.3d 1330, 1338 (11th Cir. 2010) (noting that agency interpretations contained in policy statements, manuals, and enforcement guidelines are not entitled to the force of law, and the Medicare Reimbursement Manual is not entitled to deference). Thus, an amendment to the Manual cannot supersede binding case law. Second, even if the Manual were entitled to deference, the amendment only removed the requirement of providing a "detailed" discussion of the evidence. HALLEX § 1-3-5-90, 2001 WL 34096367. The memorandum expressly states that "any required analysis can be included in . . . the recommendation. . . ." *Id*. Therefore, the Commissioner recognized that in some cases analysis of the evidence may be required, but permitted that to be done in a less formal recommendation. *Id*. The amendment does not authorize the Appeals Council to perfunctorily adhere to the ALJ's decision without providing *any* evaluation of the new evidence.

434. This evidence suggests Claimant's cardiac malady is far more severe than that reflected in the balance of the record and it contains the only opinion from any examining physicians specifically addressing the limiting effects of Claimant's impairment. Furthermore, the January 4, 2011 transthoracic echocardiogram appears to support Dr. Czerska's opinion that Claimant's ejection fraction was about 20%. R. 417. The undersigned recommends that the new evidence is material because there is a reasonable possibility that it would change the administrative outcome.

In its order denying review, the Appeals Council simply stated that it considered the new evidence, but it does not provide a basis to change the ALJ's decision. R. 2. As in *Epps* and *Flowers*, the Appeals Council here merely perfunctorily adhered to the ALJ's decision. Because the Appeals Council failed to demonstrate that it adequately evaluated the new evidence the undersigned is unable to find that the final decision of the Commissioner is supported by substantial evidence. *See Bowen*, 748 F.2d at 634. Accordingly, it is recommended that the Court reverse and remand the case for further proceedings.

## C. Listing.

Claimant argues that the ALJ erred by failing to specifically consider whether Claimant meets Listing 4.02(A)(1)(B)(1). Doc. No. 17 at 13. While the ALJ did not cite specifically to Listing 4.02(A)(1)(B)(1), the ALJ did find that Claimant did not meet listing level severity under Section 4.00 of the Listings, which includes Listing 4.02(A)(1)(B)(1). R. 20. An ALJ must consider whether a claimant meets any of the Listings, but is not required to specifically address any particular Listing and the decision may implicitly find that the a claimant does not meet a listing. *See Hutchinson v. Bowen*, 787 F.2d at 1461, 1463 (11th Cir. 1986). Accordingly, it is

recommended that the Court find that the ALJ did not err by failing to show that she specifically consider Listing 4.02(A)(1)(B)(1).

**D. Obesity.**

Claimant maintains that the ALJ erred at step-two by failing to find that Claimant's morbid obesity is a severe impairment and failed to assess the effect of that impairment on Claimant's functional abilities in the RFC. Doc. No. 17 at 20-21. The ALJ's decision does not mention Claimant's morbid obesity. R. 18-25. However, in his application, disability report, and at the hearing, Claimant did not allege disability due to obesity or allege any specific limitations that result from his obesity. R. 33-57, 70, 75, 125.

Social Security Ruling ("SSR") 02-01p provides that an ALJ should assess the effect that obesity has on the individual's ability to perform various exertional and nonexertional tasks. 2000 WL 628049 at *6. In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments, both severe and non-severe, when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.

In *Farrington v. Astrue*, Case No. 3:09-cv-94-J-TEM, 2010 WL 1252684 at *4 (M.D. Fla. Mar. 29, 2010), the Court explained:

> Articulation of the specific impairments included in the Step 2 finding, while preferable, however, is not essential for an adequate finding under the Regulations. As the Eleventh Circuit has stated, "the ALJ could not have committed any error at step two because he found that [the claimant] had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two." *Council v. Barnhart*, 127 Fed. Appx. 473 (Table), No. 04-13128, at 4 (11th Cir. Dec. 28, 2004); *see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir.1987) (stating that the finding of any severe impairment is enough to satisfy the requirement of step two).

*Id.* Therefore, as long as an ALJ's decision demonstrates consideration of the combined effect of all of a claimant's impairments, and if the ALJ finds a severe impairment at step-two, the ALJ satisfies the requirements of regulations. *Id.*

In this case, although the ALJ does not mention Claimant's morbid obesity, she states that in determining the Claimant's RFC, she must consider "all of the claimant's impairments, including impairments that are not severe." R. 19. While it would have been helpful for the ALJ to specifically address Claimant's morbid obesity in the decision, because the record does not contain any allegation of disability or limitations specifically due to obesity, it is recommended that the Court reject this argument.

**E. Remedy.**

Claimant argues that the proper remedy is a remand for an award of benefits based upon the new evidence Claimant submitted to the Appeals Council. Doc. No. 17 at 21-22. However, Claimant acknowledges that a remand for an award of benefits is only appropriate where "the Commissioner has already considered the essential evidence and it is clear that the cumulative

effect of the evidence establishes disability without any doubt." Doc. No. 17 at 21 (citing Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993)).  In this case, it is recommended that the Court reverse and remand the case because the ALJ's finding at step-five is not supported by substantial evidence, the Appeals Council failed to demonstrate that it adequately evaluated the new evidence, and the undersigned's review of the new evidence indicates that there is a reasonable possibility that it may change the administrative outcome.  Thus, the Commissioner has not already considered all the essential evidence and it is not clear that the cumulative effect of the evidence establishes disability without any doubt.   Moreover, the Court is mindful that it "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).  Accordingly, it is recommended that the Court find that the appropriate remedy is a remand for further proceedings.

## IV.    <u>CONCLUSION</u>.

For the reasons stated above, it is **RECOMMENDED** that:

1. The final decision of the Commissioner be **REVERSED**, pursuant to sentence four of Section 405(g);

2. The case be **REMANDED** for further proceedings;

3. The Clerk be directed to enter judgment in favor of the Claimant; and

4. The Clerk be directed to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on January 9, 2012.


GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests the Clerk
Mail or Deliver Copies of this Order to:

Richard A. Culbertson
Suite E
3200 Corrine Dr
Orlando, FL 32803

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida  33602
Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Pamela Houston
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
Suite 300
3505 Lake Lynda Dr.
Orlando, FL 32817-9801